[No. 1833.]

Patten v. The American National Bank of Denver.

1. Interest—Bank Deposit—Demand.
Unless there is some agreement or usage to the contrary, money deposited in bank subject to draft does not draw interest until demand is made and the bank has defaulted in its payment.

2. Same—Temporary Suspension—Receiver.
The fact that a bank is temporarily suspended and its assets are temporarily in the hands of a receiver appointed by the government does not excuse a depositor from making demand so as to render the account due and cause it to draw interest without demand.

3. Same.
The relation between a bank and its depositor is that of debtor and

creditor the debt becoming due and payable on demand, and even though a bank may be unable to pay, and a demand therefore be excusable to that extent, still there must be some notice by the depositor of his intention of terminating the relation of debtor and creditor by declaring the maturity of the debt before he can recover interest on his deposit.

*Appeal from the District Court of Arapahoe County.*

Mr. HENRY B. BABB, for appellant.

Mr. T. J. O'DONNELL and Mr. MILTON SMITH, for appellee.

WILSON, J.

This is an appeal from a judgment on the pleadings in favor of the defendant bank. From these pleadings it appears that on the 22 l day of April, 1896, the comptroller of the currency of the United States suspended the current business of the defendant bank, and appointed a temporary receiver, who thereupon took possession of defendant's books, records and assets. That said temporary receivership and suspension of business continued to the 8th day of January, 1897, when the defendant, upon compliance with certain requirements of the comptroller, was permitted to, and did, resume its general banking business, and has ever since continued therein. It further appears, that at the time of suspension, the plaintiff had about $700 on general deposit in the bank, subject to check; that no demand therefor was made until the bank resumed business on January 8, 1897, when he demanded through his agent payment of the principal, with eight per cent interest thereon from the time when the suspension of business first occurred. The principal was paid, but the payment of interest was refused. Thereupon, he commenced this suit therefor. It has been repeatedly held in this jurisdiction that interest in Colorado is a creature of statute, and regulated thereby, and that in the absence of contracts to pay the same, it is only recoverable in the cases specifically

enumerated in the statute. *R. R. Co. v. Conway*, 8 Colo. 16; *DeRemer v. Parker*, 19 Colo. 246; *Pettitt v. Thalheimer*, 3 Colo. App. 355.

The right, therefore, to recover interest in this state is purely a legal, and in no sense an equitable one. The section of the interest statute bearing upon the question at issue is as follows:

" Creditors shall be allowed to receive interest when there is no agreement as to the rate thereof, at the rate of eight per centum per annum, for all moneys after they become due, on any bond, bill, promissory note or other instrument of writing, or on any judgment recovered before any court or magistrate authorized to enter up the same within this state, from the day of entering up said judgment until satisfaction thereof be made; also, on money due on mutual settlement of accounts from the date of such settlement on money due on account from the date when the same became due, and on money received to the use of another and detained without the owner's knowledge." Laws, 1889, p. 206, sec. 2; Mills' Ann. Stats. sec. 2252.

If recoverable at all in this case, it is only under that provision of the statute which provides for its allowance on " money due on account from the date when the same became due." All authorities agree that in cases of general deposits in a bank like the one under consideration, unless there be some agreement or usage to the contrary—and none is pleaded in the case at bar—the undertaking of the bank is only to repay upon demand. Such an account, therefore, does not become due until demand is made for it, and the bank is not in default, or liable to respond in damages, until such demand and refusal. *Girard Bank v. Penn. Township Bank*, 39 Pa. St. 92; *Munnerlyn v. Savings Bank*, 88 Ga. 333. Hence, under this general rule, the plaintiff was not entitled to receive interest on his deposit, unless the circumstances were such as to legally excuse him from making a demand prior to the time when he did make it. This is the contention of the plaintiff, and presents for determination the sole issue in

the case. His argument is, that since a temporary receiver appointed by the government had taken possession of the assets of the bank, a demand would have been unavailing and futile, and that the law does not require a mere idle ceremony. Only one authority directly in point has been cited by counsel on either side, and this is against the position of plaintiff. *Sickles v. Herold*, 149 N. Y. 335.

We think the better reason, especially considering the special provisions of our statute and the decisions thereon of our supreme court, is in favor of the doctrine laid down in this case. It would seem that our statute, because it imposes upon the debtor an additional burden in the way of damages for the withholding of money after it becomes due on account, should be strictly construed. If there be any doubt about the maturity of the debt, this doubt should not, in reason and justice, be resolved against the debtor. If any act was required on the part of the creditor in order to bring about the maturity of the indebtedness, we do not believe he should be excused from the doing of this act merely upon the belief—however well grounded it might be—that the debtor could not satisfy the debt. The object of a demand is not only to secure payment of the account, if possible, but to bring about the maturity of the indebtedness, and thereafter, if payment is refused, to secure the additional right under the law to demand and receive interest—an additional sum of money— as damages for withholding payment. The same rule should apply in the case of a bank as in that of an individual, and it certainly could not reasonably be claimed that in the latter case a demand would be excused on the ground that the debtor was, or was believed to be, unable to pay if demand should be made. It will be observed that, in this case, the appointment of a receiver was only temporary. There was no allegation of insolvency. On the contrary, the reasonable presumptions arising from the facts stated are to the contrary. It is not to be supposed that the government would have permitted a resumption of business and that the bank would have continued in business, as alleged, if it had been insolvent.

Whilst, as we have said, the right to recover interest in this state is purely a statutory, legal right, and not an equitable one, still in the determination of whether a given state of facts brings the case within the statute, the results of such a construction might be properly considered.  If the doctrine urged by plaintiff is correct, then all the deposits of a bank would, without demand, bear interest, no matter how temporary or of short a duration the suspension may be.   The suspension might be for only a few days or weeks, and the deposits amount to millions of dollars.   In such case, the loss to the individual depositor would be trifling, if any—to many, none at all—but the burden imposed upon the stockholders of the bank would be unreasonable, inequitable and onerous in the extreme.

The demand was not impossible, because the entity of the corporation was not destroyed by the appointment and possession of the temporary receiver.   The proper officers of the bank could still have been reached for the purposes of making a demand.   We see no reason, either, why a demand could not have been made upon the receiver, if he were in charge as alleged in the complaint.

The authorities cited by counsel for plaintiff, and bearing upon the principles involved in the case, are all in cases where the bank was insolvent, and, as such, had made an assignment, or had been taken possession of by the proper parties for the purpose of liquidation.   We can see some reason why a demand by a depositor, in such case, should not be necessary to bring about the maturity of his debt.   By operation of law in such case, it might be said all the indebtedness of a bank matured upon the coming about of such a state of affairs.   The object of the assignment, and of the appointment of a receiver, would be for the express purpose of winding up the affairs of the bank and discharging all of its indebtedness—to the extent, at least, its assets would allow. This, however, is not the case presented here, and we express no opinion upon it.

If a demand should be excused on the assumption that the

debtor would be unable to pay, why might it not, with equal propriety, be assumed that by a failure to demand the creditor elected that he would not declare the debt to be due, and that he waived any right to demand interest?

We do not say that in no case in this state could a debt due upon demand mature until a demand is specifically made, but we do say that the circumstances of this case, as presented by the pleadings, were not sufficient, under our statute and under the general tenor and spirit of its judicial interpretation by our appellate courts, to have excused a demand by plaintiff, and entitle him to receive interest upon his deposit account as claimed by him.

For these reasons, the judgment will be affirmed.

*Affirmed.*

#### On Rehearing.

WILSON, J.

The relation between bank and depositor is that of debtor and creditor, the debt being payable on demand. This relation exists only during the will and pleasure of either party, and when the creditor desires to terminate it, he must make a demand upon the bank for payment. This is, in effect, a notice of his desire and intention to terminate the relation, and when given at once brings about the maturity of the debt. Upon refusal by the debtor to pay after such notice, the right is then conferred upon the creditor for the first time, to maintain an action against the debtor for the recovery of the debt, and under express provision of the statute, to recover interest thereon from the time of such notice of intention and demand of payment. When the circumstances are such, as is contended in the present case, that the demand would be unavailing because of the inability of the debtor to pay, and would therefore be excused, there still remains the necessity that the creditor should desire and intend to terminate the relation of debtor and creditor by bringing about the maturity of the debt, before interest should begin

to run. If he does not desire his money, nor wish to termi-
nate the relation of debtor and creditor, nor effect the matu-
rity of the debt, we know of no law which would force him
to do so. Such desire and intention being essential in order
to constitute the maturity of the debt, it would seem reason-
able that some notice thereof of some kind or character
should be given to the debtor, so as to fix the time when in-
terest should begin to run, if for no other reason. It could
hardly be contended that because a temporary embarrassment
disabled a debtor from making payment, a creditor could
come in at any time afterwards, and claim interest from the
time of such disability, solely because of such temporary dis-
ability. It is a matter of common knowledge that in the
history of the large majority of banks, and of business men,
there are occasions when if suddenly called upon to meet
their demand obligations, they would be unable to do so.
To hold that in such case the law steps in and says to the
debtor, without any act, application or intervention of the
creditor, or without any evidence of an intention on his part
to invoke a privilege which the law gives him, "All of your
demand obligations are now matured, and shall bear interest
henceforth and until paid, if the creditor should at any time
hereafter, no matter how remote, demand it,"—would be an
unconscionable hardship, as well as a doctrine destitute of all
support either in reason or legal authority. The creditor
may not desire nor need his money, may feel amply secure,
and have no intention of terminating the relation of debtor
and creditor, but the law in its kindly solicitude for his in-
terests, says, you may need it at some future time, and then
you may demand and receive interest upon the debt from
the time when, if you had desired your money, and made
a demand for it, the debtor would have been unable to pay.
This, too, although the debtor never knew or had reason to
suspect that you intended to exact this penalty, and although
many times after his temporary embarrassment, he could have
paid if you had manifested the slightest desire for payment.
This occasion might arise, if the principle contended for by

the plaintiff were acknowledged. We do not believe, however, that a doctrine which will permit of such results ever was, or ought to be the law. In our opinion, the only reasonable construction of the law under like circumstances to the case at bar, is that even though a debtor may be unable to pay, and a demand therefor be excusable to that extent, still there must be some notice to him of some kind, either by the institution of a suit, or otherwise, of the creditor's intention to terminate the relation of debtor and creditor by declaring the maturity of the debt, or some act of the creditor evidencing such desire and intention, before he can be allowed to recover interest. In the case at bar, there was no pretense of anything of the kind. During nearly nine months of the alleged temporary inability of the bank to pay, the plaintiff neither commenced suit, nor gave notice in any manner of a desire for payment to any officer of the bank, or to the temporary receiver or custodian of its assets. When he did give such notice for the first time, on January 8, 1897, by the presentation of a check for the full amount of his deposit, the debt was promptly paid. There is no allegation in the complaint that plaintiff desired payment of his deposit at any time before it was paid, or that he would have so desired or requested before such time had the bank been transacting its business as usual.

After careful consideration of the able arguments presented by counsel on rehearing, we see no reason to change our views, and the judgment will be affirmed.

.      *Affirmed.*